CHICAGO—FIRST DISTRICT—MAY, 1915.    629

Continental & C. T. & S. Bank v. I. T. C. L. Co. 192 Ill. App. 629.

Continental and Commercial Trust & Savings Bank,
Administrator, Appellee, v. Illinois Terra Cotta
Lumber Company, Appellant.

Gen. No. 20,800.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. H.
STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed May
25, 1915.

## Statement of the Case.

Action by Continental and Commercial Trust &
Savings Bank, as administrator of the estate of William J. Newburn, deceased, plaintiff, against Illinois
Terra Cotta Lumber Company, a corporation, defendant for personal injuries sustained by plaintiff's intestate.

From a judgment for fifteen hundred dollars recovered by plaintiff, as administrator, against defendant,
defendant appeals.

The action was commenced on July 28, 1909, by
Newburn against defendant Terra Cotta Company.
Subsequently Frederick Ayer and Wells Brothers
Company were made additional parties defendant. On
June 30, 1913, Newburn died from causes not claimed
to have resulted from said injuries and, upon his
death being suggested, the Continental and Commercial Trust & Savings Bank, as administrator of
Newburn's estate, was substituted as plaintiff. The
jury returned a verdict finding the defendant, Frederick Ayer, not guilty and the defendants, Terra Cotta
Company and Wells Brothers Company, guilty, and
assessed plaintiff's damages at fifteen hundred dollars. Both of said last named defendants entered motions for a new trial. On March 28, 1914, on motion of
plaintiff the cause was dismissed as to the defendant,
Wells Brothers Company, and the motions of the de-

fendant, Terra Cotta Company, for a new trial and in arrest of judgment were overruled, and the judgment appealed from was entered.

Evidence disclosed the following material facts: Newburn was a structural iron worker employed by Wells Brothers Company, the contractor who had charge of the erection of the building on which he was working. During the morning of the day of the accident Newburn and several other employees of Wells Brothers Company were engaged in putting a section of a smokestack into position in the basement of the building. There was a nine by twelve opening in the first floor. This opening was also in the second and third floors above, but not in the fourth floor. The accident occurred about two o'clock on the afternoon of June 14, 1909. At this time Newburn and a co-employee were standing upon a plank laid across the opening and engaged in the work upon the stack. At this time also certain tile setters, employees of the Terra Cotta Company, were working between the third and fourth floors, right over where Newburn and other coemployees were working. These tile setters had been working there all day. The workmen below could look up through the opening, or shaft, and see the tile setters at work. A piece of tile fell and struck Newburn on the head. The witness Zimball testified: "The first I saw was when it hit Newburn. I was standing alongside of him and I caught hold of him. * * * He leaned against me and I found that something had hit him on the head." The witness Rappold testified: "While we were standing there a piece of tile came down and hit Newburn on the head. I first saw it as it was falling down, after it hit Newburn, just about striking the floor. I noticed that the tile broke. It was a half tile." He further testified that he had been on the third floor a few minutes before the accident; that about three men were then working for the Terra Cotta Company between the third and fourth

Continental & C. T. & S. Bank v. I. T. C. L. Co. 192 Ill. App. 629.

floors; that they were standing on "horses" which rested on planks across the opening; that there were then no other men in the vicinity of the openings, and that while there were other men on the third floor the nearest of them to the opening was about fifty feet. After the accident Newburn appeared dazed and blood was running from his wounds. On the same day he was sent to a physician employed by Wells Brothers Company, who examined and treated him. This physician testified on the trial that upon that examination he found a lacerated wound of the scalp, slightly over an inch in length, on the back of the head; that there was also a small puncture wound, which was superficial; that the lacerated wound necessitated two stitches; and that "there was apparently a slight involvement of the outer table of the skull, a slight depression." On the day following the accident Newburn was seen near the building with his head bandaged. Another physician, who examined him on the second day after the accident and subsequently treated him from time to time, testified that there was a depression in the skull; that his right pupil was dilated, that there was a general tremor of the left hand and arm, and that these conditions lasted about a week. Still another physician, who examined him about forty days after the accident, testified that under the larger wound there was a depression of the skull, that Newburn was pale, and that there was a tremor of his hands and his reflexes were exaggerated, showing an unstable condition of the nervous system. Newburn was laid up and unable to work for about two months and lost in wages about two hundred and forty dollars. He commenced working again on August 16, 1909, but did not do heavy manual labor. He was employed as foreman by different employers, and on one job acted as superintendent, receiving higher wages until his death than he received at the time of the accident. Mrs. Webber, a sister of Newburn's

wife, testified that prior to the accident he was in perfect health; that after the accident when she talked with him he would seem confused and would talk about something else; that he acted this way up to the time of his death, but never did so prior to the accident. Mrs. Buchanan, with whom Newburn boarded for nine months during the eighteen months prior to his death, testified that "he had sort of a dreamy way a great deal of the time," and that "he got off from one subject to another." Another witness testified to the effect that about a year after the accident he noticed that, while Newburn was apparently in good health, he "would try to tell something and forget it," and that "he would start off on another subject, or stop in the middle of a sentence and think a while before he would speak again."

It is alleged in the third count, in substance, that on June 14, 1909, Frederick Ayer was the owner of a certain building then in course of erection in the city of Chicago; that said Wells Brothers Company was a contractor engaged in the erection of said building and that said Ayer and said Wells Brothers Company had charge, control and supervision of the erection thereof; that the Terra Cotta Company was also engaged upon said building, laying tile above where deceased in his lifetime was then working; that deceased was then and there a servant of Wells Brothers Company, working under its direction at the bottom of a certain opening which extended upward through numerous floors of said building; that "it was then and there the duty of the defendants, and each of them, to exercise ordinary care for the safety of the deceased and to protect deceased from falling objects"; that it was also the duty of the Terra Cotta Company "to exercise care in the handling of its tile at the place aforesaid"; yet the defendants "negligently and carelessly failed to cover or protect the openings in said floors aforesaid," and the Terra Cotta Company "also negligently and carelessly failed in the handling

Continental & C. T. & S. Bank v. I. T. C. L. Co. 192 Ill. App. 629.

of its said tile to prevent said tile from falling through said openings," so that, by reason of the said several acts of commission and omission of said defendants, and while deceased was in the exercise of due care for his own safety, and while the defendants and each of them knew, or in the exercise of ordinary care should have known, of the dangers to the deceased in his work there, "a piece of tile fell down through said openings and struck the deceased with great force and violence," whereby he was greatly and permanently injured, etc.

R. P. Garrett, for appellant; Zimmerman, Myers & Garrett, of counsel.

H. E. Wynekoop, for appellee; Morse Ives, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

## Abstract of the Decision.

1. Appeal and error, § 1595*—*when general averments presumed in favor of pleader.* After verdict, on motion in arrest of judgment or on appeal, everything which by fair and reasonable intendment may be inferred from the general averments of the count will be presumed in favor of the pleader.

2. Negligence, § 120*—*when negligence and breach of duty sufficiently alleged.* Declaration in action by workman for personal injuries caused by fall of a piece of tile, examined and held sufficient, after verdict, to support a finding that defendant was guilty of negligence and breach of duty.

3. Master and servant, § 351*—*when employee not bound to anticipate negligence of employees of another.* One employed in a work on which employees of another are also engaged is not bound to anticipate negligence on the part of such other employees, and it is a question for the jury, on the facts, whether he had any reason to anticipate danger in the absence of such negligence.

4. Master and servant, § 302*—*when assumption of risk not in-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

volved. The question of assumed risk is not involved where the relation of master and servant does not exist.

5. APPEAL AND ERROR, § 1411*—*when verdict not disturbed where evidence conflicting.* In an action to recover for personal injuries alleged to have been caused by negligence, the verdict will not be disturbed where the evidence is conflicting.

6. APPEAL AND ERROR, § 1466*—*when calling widow of plaintiff's decedent not reversible error.* In an action for personal injuries to one who died before trial, the fact that his widow was called as a witness is not reversible error on the ground that it influenced the amount of the verdict, where the only fact to which she testified was that she was his widow and it was shown by other witnesses that he was married at the time of his death.